IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs January 7, 2026

**LAMONTE COLE v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Madison County**
**No. C-25-125          Joseph T. Howell, Judge**

_____

**No. W2025-01491-CCA-R3-PC**
_____


Petitioner, Lamonte Cole, appeals from the order of the Madison County Circuit Court denying post-conviction relief.  Upon review, we affirm.

**Tenn R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which J. ROSS DYER, and MATTHEW J. WILSON, JJ., joined.

William J. Milam, Jackson, Tennessee, for the appellant, Lamonte Cole.

Jonathan Skrmetti, Attorney General and Reporter; Elizabeth Evan, Assistant Attorney General; Jody S. Pickens, District Attorney General; and Shaun A. Brown, Deputy District Attorney General, for the appellee, State of Tennessee.


**OPINION**

At the beginning of the Petitioner's December 9, 2024 guilty plea hearing, the prosecutor announced to the court that the Petitioner was entering a "blind" plea to the indictment because he had other criminal matters in other counties that the Petitioner believed would be "worked out" in the following week.  As part of their agreement, the prosecutor stated the Petitioner's bond would be reinstated for him to deal with the other matters.  The Petitioner was required to report back on the instant case for sentencing on December 17, 2024, following resolution of the other pending criminal matters.  The prosecutor advised the court that the parties had agreed upon an "eight-year-to-serve offer" if the Petitioner reported for sentencing, passed a drug screen, and had no new arrests.  However, there was no agreement to the sentence if the Petitioner failed to comply with

these conditions. Defense counsel was present and agreed to the terms as announced by the prosecutor.

During the guilty plea colloquy, the trial court advised the Petitioner that he had a right to stop the proceedings and ask any questions at any time, and the Petitioner affirmed that he understood. The court asked the Petitioner if he had signed the plea paperwork, whether he had the opportunity to review the same with trial counsel, and the Petitioner replied, "Yes, Your Honor." The Petitioner also affirmed that he understood the proceedings he was going through by entering the guilty plea. The court began to advise the Petitioner of his constitutional rights, and the Petitioner interrupted the court to ask counsel a question, and the court paused the proceedings to allow them to confer. The court then proceeded to advise the Petitioner of his constitutional rights as relevant to entry of a guilty plea, the Petitioner indicated that he understood, and he waived his rights.

The State noted that the Petitioner was entering a guilty plea in count one of the indictment to being a convicted felon in possession of a firearm having a prior violent felony conviction, which carried a sentence range of eight to twelve years to be served at 85%. For count two, the Petitioner was pleading to being a convicted felon in possession of a handgun, which carried a sentencing range of two to four years to be served at 85%. The State noted that each count would merge at sentencing because they involved possession of the same firearm on the same day. The Petitioner indicated that he understood the nature of the charges, the applicable penalties, and had no questions.

The Petitioner stipulated that the facts as alleged in the indictment were substantially true and correct. The court repeated the terms and conditions of the plea agreement. In addition to remaining drug and alcohol free, the plea agreement required the Petitioner not to be arrested for any new charges. If the Petitioner failed to comply with the conditions of the plea agreement, the trial court would determine the length of his sentence. The Petitioner affirmed that he understood the plea agreement. Defense counsel noted that this was "an incentive [for the Petitioner] to return and act properly while he's out these eight days that he would be out until that sentencing. The 17th [of December], Your Honor, was his trial date, so that's why we have that date in mind." The court again began to advise the Petitioner that if he did not comply, and the Petitioner interrupted, "That the sentence would be void." The court reviewed the terms, conditions, and consequences for failing to comply with the plea agreement a third time, and the Petitioner indicated that he understood. The Petitioner advised the court that he did not have any questions and that he was satisfied with the representation of trial counsel.

At the conclusion of the plea colloquy, the trial court found that the Petitioner was entering a knowing and voluntary guilty plea and that there was a factual basis in support of the guilty plea. The court accepted the guilty plea, reinstated the Petitioner's bond in

accord with the plea agreement, and reset the matter for December 17th at 8:15 a.m. for sentencing.

On April 21, 2025, a sentencing hearing was held at which the parties offered argument only. The State recalled the history of the Petitioner's case, noted that the December 17th sentencing date "came and went," and that the Petitioner came back into their custody only because he was rearrested in another county on new charges of public intoxication and other offenses. The State, no longer bound by the plea agreement, moved the court for a sentence at the high end of the range. Second trial counsel[1] argued for a sentence in the middle of the range and for split confinement. The Petitioner provided a "promissory note" to the court and his family, committing to being a better person and a more productive citizen if given another opportunity on release. The trial court imposed an effective eleven-year sentence to be served at 85%.

On April 23, 2025, the Petitioner filed a pro se petition for post-conviction relief, alleging, in pertinent part, that trial counsel "did not properly advise [the Petitioner] about a plea." The pro se petition was signed by the Petitioner; however, it did not include a page verifying under oath that the issues as alleged were true and correct. See Tenn. Code Ann. § 40-30-104(e) ("The petition and any amended petition shall be verified under oath."). The post-conviction court issued a preliminary order appointing counsel and requiring a response from the State. On May 5, 2025, the State filed its response and motion to dismiss the Petitioner's Pro Se filing, alleging that the pro se petition was not in proper form and that it failed to meet the mandates of Tennessee Code Annotated sections 40-30-104(c), (d), (e), (f), and (g). On July 9, 2025, appointed post-conviction counsel filed a notice that no amendment to the Petitioner's pro se petition for post-conviction relief would be filed.

At the August 25, 2025 post-conviction hearing, trial counsel testified that he was retained to represent the Petitioner, that he filed the routine motions in this case, and that the Petitioner initially wanted him to file a motion to suppress. Trial counsel advised the Petitioner that a suppression motion would not succeed because the Petitioner was on video during the traffic stop telling the officers that a gun was in the car. Based on the evidence, trial counsel believed going to trial would have been a "mistake" and he discussed settling the case with the Petitioner.

Trial counsel recalled the terms and conditions of the Petitioner's guilty plea; specifically, that he would be released from jail pending sentencing and that he would receive an eight-year sentence if he returned on time for sentencing. Trial counsel noted that the Petitioner did not appear at sentencing. Trial counsel did not communicate with the Petitioner between entry of his guilty plea and when he was rearrested. Trial counsel

---

[1] The Petitioner was represented by different trial counsel at sentencing.

explained that the Petitioner filed a board complaint against him, which prompted trial counsel to withdraw from representation. Before entering the guilty plea, trial counsel reviewed the evidence against the Petitioner, explained the plea paperwork with him, and reviewed the possible defenses in his case.

On cross-examination, trial counsel agreed that the Petitioner was released for about eight to ten days or a week as part of the plea agreement. Trial counsel said the Petitioner wanted to resolve his other outstanding criminal matters in other counties and Kentucky. Trial counsel appeared at the December 17th sentencing hearing, but the Petitioner did not, and the parties were just in "limbo" until they heard from the Petitioner.

Second counsel testified that he was appointed to represent the Petitioner for the purpose of sentencing. As relevant to the issues herein, second counsel stated that he had reviewed the original plea paperwork with the Petitioner. He explained the circumstances of a "blind" plea to the Petitioner. However, second counsel acknowledged that the Petitioner had other charges in other counties, failed to appear in court for the instant sentencing hearing, and had previously failed to appear in court. Second counsel said, "That did not look good and obviously cost him in the sense that he could have had the eight-year sentence, whether it was to serve or on probation." Second counsel told the Petitioner that when he failed to appear for the original sentencing hearing, that was the end of the eight-year-sentence possibility.

The Petitioner testified that he did not understand how long he had to withdraw his guilty plea. He said he asked for thirty days at the guilty plea hearing because he knew he had other charges to resolve. He did not understand why "they kep[t] saying it was a week involved." In effect, the Petitioner stated that he did not understand the date for or when his sentencing hearing was set. Asked specifically what, if anything, trial counsel did not do in preparation for the guilty plea that the Petitioner wished trial counsel would have done, the Petitioner stated that he was not told that his case could proceed to trial. The Petitioner also stated that he was unaware of "the process of how things go" and did not have an understanding of the charges against him.

On cross-examination, the Petitioner said that when he stepped back to confer with trial counsel during the guilty plea colloquy, he told trial counsel that he wanted to withdraw his guilty plea. He said trial counsel told him it was too late. He agreed that he did not tell the judge that he wanted to withdraw his plea. The Petitioner clarified that he told trial counsel that he wanted to withdraw his plea after they left the courtroom. He insisted that he asked trial counsel for thirty days, not a week or ten days. After asking trial counsel about the thirty days, the Petitioner alleged that trial counsel said, "everything was good." The Petitioner acknowledged, however, even if that was true, the Petitioner

was not in court for sentencing thirty days later because he was in custody in another county.

On August 29, 2025, the post-conviction court entered an order denying relief. The court had reviewed the transcript of the guilty plea hearing and determined that the Petitioner had been advised of all his rights, that the trial court had reviewed the guilty plea with the Petitioner, that the Petitioner understood what he was doing by pleading guilty, and that the Petitioner stated that he was satisfied with trial counsel's representation. The post-conviction court also credited the testimony of trial counsel. Given these considerations, the post-conviction court determined that the Petitioner had failed to prove his case by clear and convincing evidence. This timely appeal followed.

## ANALYSIS

**I.  Jurisdiction.**  The State contends the post-conviction court was without jurisdiction to rule on the petition because the Petitioner failed to verify the issues in the petition under oath before the hearing. The Petitioner did not respond to the State's motion to dismiss on this ground in the lower court or in his brief on appeal. Here, the State correctly observes that the issues within the petition for post-conviction relief were not verified under oath by the Petitioner as required by Code sections 40-30-104(d) or (e). However, even though the State included these grounds in their motion to dismiss, they did not object to or raise this issue prior to the post-conviction evidentiary hearing. In addition, the post-conviction court allowed the case to proceed without pointing out the error, and the petitioner testified under oath at the evidentiary hearing, thereby adopting and attesting to the veracity of the claims in the petition. Under these circumstances, we will consider the merits of the Petitioner's claims. See Sexton v. State, 151 S.W.3d 525, 530 (Tenn. Crim. App. 2004) (concluding that plenary review of petitioner's claims was appropriate despite absence of verification when "[t]he trial court did not notify the petitioner of its concerns until the evidentiary hearing" and "took sworn testimony from the petitioner and her trial attorneys relative to the petitioner's claims"); Watt v. State, No. M2015-02411-CCA-R3-PC, 2016 WL 6638856, at *4 (Tenn. Crim. App. Nov. 10, 2016) (same); Lipton v. State, No. E2019-01037-CCA-R3-PC, 2020 WL 3182628, at *4 (Tenn. Crim. App. June 15, 2020).

**II.  Ineffective Assistance of Counsel.**  The Petitioner asserts that trial counsel's representation of him was deficient, that both prongs of Strickland have been met, and that he has proven by clear and convincing evidence that trial counsel was ineffective. The law governing this issue provides that post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgement of a constitutional right. Tenn. Code Ann. § 40-30-103. A post-conviction

petitioner has the burden of proving the factual allegations by clear and convincing evidence. Id. § 40-30-110(f); see Tenn. Sup. Ct. R. 28, § 8(D)(1); Nesbit v. State, 452 S.W.3d 779, 786 (Tenn. 2014). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

A claim for post-conviction relief based on alleged ineffective assistance of counsel presents a mixed question of law and fact. Mobley v. State, 397 S.W.3d 70, 80 (Tenn. 2013) (citing Calvert v. State, 342 S.W.3d 477, 485 (Tenn. 2011)). This court reviews "a post-conviction court's conclusions of law, decisions involving mixed questions of law and fact, and its application of law to its factual findings de novo without a presumption of correctness." Whitehead v. State, 402 S.W.3d 615, 621 (Tenn. 2013) (citing Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011); Calvert, 342 S.W.3d at 485). However, a post-conviction court's findings of fact are conclusive on appeal unless the evidence in the record preponderates against them. Calvert, 342 S.W.3d at 485 (citing Grindstaff, 297 S.W.3d at 216; State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999)). "Accordingly, appellate courts are not free to re-weigh or re-evaluate the evidence, nor are they free to substitute their own inferences for those drawn by the post-conviction court." Whitehead, 402 S.W.3d at 621 (citing State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001)). "As a general matter, appellate courts must defer to a post-conviction court's findings with regard to witness credibility, the weight and value of witness testimony, and the resolution of factual issues presented by the evidence." Id. (citing Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999)).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting

Strickland, 466 U.S. at 694).  In order to satisfy the "prejudice" requirement in the context of a guilty plea, the petitioner must show that, but for counsel's errors, he would not have entered his guilty plea and would have proceeded to trial.  Serrano v. State, 133 S.W.3d 599, 605 (Tenn. 2004) (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

The Petitioner is aggrieved over trial counsel's "poor communication" in failing to advise him of his sentencing date as part of his plea agreement and trial counsel's alleged failure to advise the court of his desire to withdraw his plea during the guilty plea hearing.  The record shows that during the guilty plea hearing, the prosecutor announced that the Petitioner's bond was being reinstated to allow him to resolve other pending criminal matters.  If the Petitioner reported to the December 17th sentencing hearing drug and alcohol free without any new arrests, then he would receive an agreed upon eight-year sentence.  Trial counsel specifically stated that this agreement was "an incentive [for the Petitioner] to return and act properly while he's out these eight days that he would be out until that sentencing.  The 17th, Your Honor, *was his trial date*, so that's why we have that date in mind."  The court reviewed the terms, conditions, and consequences for failing to comply with the plea agreement three times, and the Petitioner indicated that he understood.  The Petitioner advised the court that he did not have any questions and that he was satisfied with the representation of trial counsel.  The Petitioner failed to appear at the December 17th sentencing hearing.  He was sentenced on April 21, 2025, and the trial court imposed an effective eleven-year sentence to be served at 85%.

At the post-conviction hearing, trial counsel recalled the terms and conditions of the Petitioner's guilty plea; specifically, that he would be released from jail pending sentencing and that he would receive an eight-year sentence if he returned on time for sentencing.  Trial counsel said that the Petitioner was released for about eight to ten days or a week as part of the plea agreement because the Petitioner wanted to resolve his other outstanding criminal matters.  Trial counsel appeared at the December 17th sentencing hearing, but the Petitioner did not, and the parties were just in "limbo" until they heard from the Petitioner.  Trial counsel was not asked if the Petitioner asked him to withdraw his guilty plea during the guilty plea hearing.  Second counsel reviewed the original plea paperwork with the Petitioner and acknowledged that the Petitioner had other charges in other counties, failed to appear in court for the instant sentencing hearing, and had previously failed to appear in court.  Second counsel said, "That did not look good and obviously cost him in the sense that he could have had the eight-year sentence, whether it was to serve or on probation."  Second counsel told the Petitioner that when he failed to appear for the original sentencing hearing, that was the end of the eight-year-sentence possibility.  The Petitioner testified and insisted that he asked trial counsel about the thirty days, and trial counsel said, "everything was good."  The Petitioner acknowledged, however, even if that was true, the Petitioner was not in court for sentencing thirty days later because he was in custody in another county.  Although the Petitioner stated that he asked trial counsel to withdraw his

guilty plea, the Petitioner agreed that he did so after they left the courtroom. The Petitioner said trial counsel told him it was too late.

Based on the above evidence, the post-conviction court credited the testimony of trial counsel and determined that the Petitioner had failed to establish ineffective assistance of counsel by clear and convincing evidence. The record fully supports the determination of the post-conviction court. Accordingly, the Petitioner has failed to establish deficient performance or prejudice arising therefrom. He is not entitled to relief.

## CONCLUSION

Upon review, we affirm the judgment of the post-conviction court.


s/ **Camille R. McMullen**
CAMILLE R. MCMULLEN, JUDGE